UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 10, 2017 |
|---|---|---|---|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Cameron Nelson
Matthew Gersham

Attorneys Present for Defendants:
Joseph Lopez

**Proceedings:** PLAINTIFF UL'S MOTION FOR CIVIL CONTEMPT AND SANCTIONS (Dkt. 57, filed March 7, 2017)

## I. INTRODUCTION

On November 3, 2016, plaintiff UL LLC filed this action against defendants The Space Chariot, Inc., Kevin Walker, Donabelle Escarez Mortel (aka Donabella Mortel), and John Does 1–10. Dkt. 1. UL asserts five claims: (1) trademark infringement, 15 U.S.C. § 1114; (2) counterfeit of registered marks, 15 U.S.C. § 1114; (3) unfair competition and false designation of original and false and misleading representations, 15 U.S.C. § 1125(a); (4) unfair competition in violation of California Business and Professions Code §§ 17200 et seq.; and (5) false advertising under California Business and Professions Code §§ 17500 et seq. The gravamen of UL's complaint is that Space Chariot, Walker, and Mortel ("defendants") are using UL marks on various websites to falsely represent that Space Chariot's goods—namely, hoverboards—have been certified by UL.[1]

Also on November 3, 2016, UL filed an ex parte application for a temporary restraining order, seizure order, expedited discovery, and order to show cause re: preliminary injunction. Dkts. 4, 7. On the same day, the Court denied UL's application for a seizure order. Dkt. 12.

On November 17, 2016, the Court granted UL's motion for a temporary restraining order and ordered defendants to show cause why a preliminary injunction should not be

---

[1] The underlying facts of this case are known to the parties and are set forth in this Court's prior orders, including the Court's order dated January 9, 2017. See dkt. 36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 10, 2017 |
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

issued. Dkt. 25 ("TRO"). On December 9, 2016, the parties stipulated to a preliminary injunction. Dkt. 31. Pursuant to this stipulation, the Court: (1) enjoined defendants from, inter alia, using UL marks and dispersing personal and corporate assets; and (2) ordered defendants to, inter alia, (a) produce all bank statements in their possession or control, (b) identify all persons affiliated with the domain names truehoverboard.com, perfecthoverboards.com, and spacechariotca.com, and identify the nature of the relationship between defendants and those domain names, and (c) provide an accounting of any assets having a value greater than $5,000 and the location and identify thereof. Dkt. 33 ("Preliminary Injunction").

On January 9, 2017, the Court denied Walker and Mortel's motion to dismiss UL's claims against them. Dkt. 36.

On March 3, 2017, the Court granted defendants' request for a continuance of the hearing on UL's motion for partial summary judgment. Dkt. 57. At that time, however, the Court took note of UL's "serious allegations that defendants have been dissipating assets in violation of the Court's preliminary injunction." Id. at 2. The Court "admonish[ed] defendants to comply with the Court's injunction" and warned that "[f]ailure to do so may result in the imposition of sanctions." Id.

On March 7, 2017, UL filed a motion for civil contempt and sanctions on the grounds that defendants violated portions of the TRO and the Preliminary injunction. Dkt. 57 ("Motion"). Defendants filed their opposition on March 20, 2017, dkt. 58 ("Opp'n"), and UL filed its reply on March 27, 2017, dkt. 59 ("Reply").

Having carefully considered the parties' arguments, the Court concludes as follows.

## II.  LEGAL STANDARD

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." California Dep't of Soc. Servs. v. Leavitt, 523 F.3d 1025, 1033 (9th Cir 2008) (quoting Shillitani v. United States, 384 U.S. 364, 370 (1966)). A party requesting an adjudication of civil contempt must establish "by clear and convincing evidence that the contemnors violated a specific and definite order of the court." Stone v. City and County of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992). "The burden then shifts to the contemnors to demonstrate why they were unable to comply." Id. The respondent's conduct "need not be willful" to violate a court order, and there is "no good

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 10, 2017 |
|---|---|---|---|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

faith exception to the requirement of obedience." In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d 693, 695 (9th Cir. 1993). However, a respondent may avoid being found in contempt by demonstrating that their failure to comply with a court order was "based on a good faith and reasonable interpretation of the order." Id. Additionally, "contempt is appropriate only when a party fails to comply with a court order that is both specific and definite." Balla v. Idaho State Bd. of Corr., 869 F.2d 461, 465 (9th Cir. 1989).

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986). Coercive fines, or any portion thereof, are payable to the Court rather than to the opposing party. Id. When imposing a coercive civil contempt sanction, a court should consider: (1) the character and magnitude of the harm from continued noncompliance; (2) the probable effectiveness of any sanctions in achieving future compliance; (3) the amount of defendant's financial resources; and (4) the willfulness of the violating party. See United States v. United Mine Workers of Am., 330 U.S. 258, 303–04 (1946); General Signal Corp, 787 F.2d at 1380. The amount of a compensatory fine, on the other hand, should be based upon the movant's actual losses suffered as a result of the violation. See Shuffler v. Heritage Bank, 720 F.2d 1141, 1148 (9th Cir. 1983).

## III. DISCUSSION

UL has demonstrated by clear and convincing evidence that defendants have violated the TRO and the Preliminary Injunction.

UL has shown that defendants owned and controlled the domain names truehoverboard.com and perfecthoverbaords.com, which were operational as of December 6, 2016 and which sold the same products as the original Space Chariot website and included UL marks.[2] However, the TRO ordered defendants to disable the

---

[2] See, e.g., dkt. 50-7, Ex. 34 (on November 27, 2016, defendants posted to the Space Chariot Facebook page "Don't forget you can get a Space Chariot hoverboard from True Hoverboard!...Check them all out at www.TrueHoverboard.com"); dkt. 50-8, Ex. 35 (the "truehoverboards" Instagram account included several references to Space Chariot, the Space Chariot logo, and many references to UL and purported UL 2272

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 10, 2017 |
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

domain name spacechariot.com; enjoined defendants from using the UL marks in connection with the sale of merchandise not authorized by UL, and enjoined defendants from offering for sale any hoverboards not certified by UL. TRO at 3, 6.

UL has shown that defendants dispersed assets in violation of the TRO by selling the domain name perfecthoverboards.com for $15,000 to Richard Harrison on November 21, 2016.³ On November 23, 2016, Walker withdrew $8,000, the first installment paid by Harrison, from the Space Chariot bank account.⁴

UL has shown that defendants dispersed assets in violation of the Preliminary Injunction by selling for $27,500 the domain names spacechariot.com and truehoverboard.com, along with the corresponding social media accounts, to Aaron Wesel on December 15, 2016.⁵

UL has shown that defendants failed to provide a full accounting of assets having a value of more than $5,000, in violation of the Preliminary Injunction, because defendants

---

certification); dkt. 50-15, Declaration of Aaron Wesel (stating that he purchased the spacechariot.com and truehoverboard.com domain names, along with associated Facebook and Instagram accounts, for $25,000 from "Creative Geniuses," an entity with whom he corresponded using the email address info@thecreativegniuses.com); dkt. 50-12, Ex. 44 (the domain name thecreativegeniuses.com was registered by Walker).

³ See, e.g., dkt. 57-1, Declaration of Richard Harris (stating that he purchased the domain name perfecthoverboard.com from "Creative Geniuses, Inc." after communicating with "Kevin" via an online marketplace and via email to the email address info@the creativegegeniuses.com); dkt. 57-4, Ex. 12 (bank record showing a November 23, 2016 deposit of $8,000 into the Space Chariot bank account from Richard Harris).

⁴ Dkt. 57-4, Exs. 12, 13.

⁵ See, supra note 2; dkt. 57-4, Ex. 14 (bank record showing a deposit of $27,500 on December 16, 2016 into the Space Chariot bank account from Aaron Wesel).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 10, 2017 |
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

listed only Walker's 2012 Porsche Panamera, and did not include the domain name and social media accounts for Space Chariot, True Hoverboard, or Perfect Hoverboard.[6]

UL has shown that defendants failed to provide a full accounting of living expenses, business expenses, and transfers of assets, in violation of the Preliminary Injunction, because, inter alia, defendants did not disclose their lease agreement.[7]

UL has shown that defendants failed to abide by asset freeze required by the TRO and the Preliminary Injunction, which both restricted living expense to less than $4,000 per month.[8]

UL has shown that defendants produced only two months' of bank statements (for August and September 2016), in violation of the Preliminary Injunction's requirement that defendants produce all bank statements in their possession, custody, and control from July 1, 2015 to the present by December 15, 2016.[9]

Defendants do not dispute UL's contentions or evidence. Rather, defendants contend that they sold the domain names and websites of Space Chariot in order to fund their defense of this lawsuit. Opp'n at 5. Defendants assert that they were under the impression that their counsel had reached an agreement with plaintiff's counsel that the domain names could be sold to fund their legal defense because, on or about November 21, 2016, defendants' attorney at the time (Yuri Galperin) sent an email to plaintiff's counsel that stated: "Per our conversation of today's date, this email serves to confirm that we have agreed that Defendants' retainer payment to our firm will not violate the asset freeze order." Id.; see dkt. 58-1. Defendants contend that "approximately seventy percent (70%) of the funds from these sales went towards paying Defendants' legal fees." Opp'n at 6. Defendants assert that their legal fees are particularly high because of UL's "aggressive litigation tactics." Id. Finally, defendants assert that they are in poor

---

[6] Dkt. 57-4, Ex. 5.

[7] Dkt 54-7, Exs. 6–9. In response to the instant motion, Walker submitted the cover page to his lease. See dkt. 58-9.

[8] Dkt. 54-7, Ex. 11 (bank statement for Space Chariot showing ATM and debit card withdrawals in excess of $4,000 in the last two weeks of November, after the TRO had been issued on November 17, 2016).

[9] Dkt. 50-3 ¶ 38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 10, 2017 |
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

financial condition and they would not be able to support themselves should the Court impose any further asset freeze. Id. at 8.

  Defendants' arguments fall short for several reasons. First, an agreement that defendants' retainer payments to their counsel do not violate the TRO does not permit defendants to dissipate assets (for which they failed to account) to make those payments. Second, defendants offer no documentation showing that 70 percent of the proceeds from these dissipated assets went toward legal fees. Notably, defendants' previous counsel *returned* $12,000 in legal fees.[10] Third, even if it is true that 70 percent of the dissipated assets were spent on legal fees, defendants do not account for the remaining 30 percent ($12,750). If the TRO and the Preliminary Injunction (to which defendants stipulated) caused defendants hardship, the proper course of action was to seek a modification of the Court's orders, not to defy them. See A&M Records, Inc. v. Napster, Inc., 284 F.3d 1091, 1098 (9th Cir. 2002) ("A district court has inherent authority to modify a preliminary injunction in consideration of new facts.")

  The Court finds defendants in contempt of the TRO and the Preliminary Injunction. In light of the character and magnitude of defendants' violations of the TRO and Preliminary Injunction and the necessity of deterring defendants' conduct in violation of the Court's orders, the Court **GRANTS** UL's request and

  (1) Orders an asset freeze—with the exception of ordinary living expenses and rent as provided under the Preliminary Injunction—effective immediately, until defendants' satisfactorily comply with the Court's orders;

  (2) Orders defendants to produce—on or before April 17, 2017—all bank statements, accounting, and income records in their possession, custody, and control from July 1, 2015 to present.

  (3) Orders defendants to produce—on or before April 17, 2017—all documents relating to spacechariotca.com and any other websites they created, owned, or controlled that bear counterfeit UL marks;

---

[10] Dkt 57-4, Ex. 11 (bank records showing the return of $1,000 by the IP technology Legal Group and the return of $11,000 by Lieber & Galperin).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 10, 2017 |
|---|---|---|---|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

(4) Orders defendants to produce—on or before April 17, 2017—all documents related to any internet hosts, domain name registrars, and financial institutions with whom defendants have a relationship; and

(5) Awards costs and attorneys' fees incurred by UL for issuing subpoenas to third party banks to obtain defendants' bank records, for investigating the dispersing of defendants' assets, and for filing its motion and reply.

See Motion at 10. In addition, the Court orders defendants to account for the $42,500 in dissipated assets, specifying the amounts paid to third parties and the identity of the third-party recipients of such payments, and providing documents that support this accounting. Defendants shall provide such an accounting on or before April 17, 2017.

Accordingly, the Court directs UL to submit a request for attorneys' fees and costs on or before April 24, 2017, specifying the amount they seek to recover, documenting the hours expended and the hourly rates of their counsel, and demonstrating that those rates are consistent with those prevailing in the community given the skill, experience, and reputation of UL's counsel. Defendants shall file an opposition to this request on or before May 8, 2017.

## IV. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** UL's motion for contempt and sanctions.

IT IS SO ORDERED.

|  | 00 | : | 23 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |