## CIVIL MINUTES – GENERAL ‘O’

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
|---|---|---|---|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

Not Present               Not Present

**Proceedings:**      (IN CHAMBERS) - DEFENDANT THE SPACE CHARIOT'S MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT (Dkt. 50, filed February 22, 2017)

PLAINTIFF UL'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 50, filed February 22, 2017)

The Court finds this motion appropriate for decision without oral argument. <u>See</u> Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. Accordingly, the hearing date of April 24, 2017 is vacated, and the matter is hereby taken under submission.

## I. INTRODUCTION

On November 3, 2016, plaintiff UL LLC filed this action against defendants The Space Chariot, Inc., Kevin Walker, Donabelle Escarez Mortel (aka Donabella Mortel), and John Does 1–10. Dkt. 1. UL asserts five claims: (1) trademark infringement, 15 U.S.C. § 1114; (2) counterfeit of registered marks, 15 U.S.C. § 1114; (3) unfair competition and false designation of original and false and misleading representations, 15 U.S.C. § 1125(a); (4) unfair competition in violation of California Business and Professions Code §§ 17200 <u>et seq.</u>; and (5) false advertising under California Business and Professions Code §§ 17500 <u>et seq.</u> The gravamen of UL's complaint is that Space Chariot, Walker, and Mortel ("defendants") are using UL marks on various websites to falsely represent that Space Chariot's goods—namely, hoverboards—have been certified by UL.

Also on November 3, 2016, UL filed an ex parte application for a temporary restraining order, seizure order, expedited discovery, and order to show cause re: preliminary injunction. Dkts. 4, 7. On the same day, the Court denied UL's application for a seizure order. Dkt. 12.

## CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
|---|---|---|---|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

On November 17, 2016, the Court granted UL's motion for a temporary restraining order and ordered defendants to show cause why a preliminary injunction should not be issued. Dkt. 25 ("TRO"). On December 9, 2016, the parties stipulated to a preliminary injunction. Dkt. 31. Pursuant to this stipulation, the Court: (1) enjoined defendants from, inter alia, using UL marks and dispersing personal and corporate assets; and (2) ordered defendants to, inter alia, (a) produce all bank statements in their possession or control, (b) identify all persons affiliated with the domain names truehoverboard.com, perfecthoverboards.com, and spacechariotca.com, and identify the nature of the relationship between defendants and those domain names, and (c) provide an accounting of any assets having a value greater than $5,000 and the location and identify thereof. Dkt. 33 ("Preliminary Injunction"). On April 10, the Court granted UL's motion for civil contempt and sanctions on the grounds that defendants violated portions of the TRO and the Preliminary Injunction. Dkt. 74.

On January 9, 2017, the Court denied Walker and Mortel's motion to dismiss UL's claims against them. Dkt. 36.

On February 22, 2017, Space Chariot filed a motion for leave to file a third-party complaint against Deep Vapes, Inc. Dkt. 49 ("MTPC"). UL filed an opposition to Space Chariot's motion on April 3, 2017, dkt. 69 ("Opp'n to MTPC"), and Space Chariot filed a reply on April 10, 2017, dkt. 73 ("MTPC Reply").

Also on February 22, 2017, UL filed a motion for partial summary judgment as to its first and second claims (trademark infringement and counterfeit of registered marks). Dkt. 50 ("MSJ"). Defendants filed their opposition to UL's motion on April 3, 2017, dkt. 63 ("Opp'n to MSJ"), and UL filed its reply on April 10, 2017, dkt. 71 ("MSJ Reply").

On April 19, 2017, Walker and Mortel filed a notice that they have filed Chapter 13 Bankruptcy Petitions. Dkt. 79. Accordingly, this action is stayed as to Walker and Mortel and this order applies only to Space Chariot.

Having carefully considered the parties' arguments, the Court concludes as follows.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

## II. BACKGROUND

The following facts are not in dispute unless otherwise noted.[1]

UL owns the well-known UL-in-a-circle certification mark ("Certification Mark") and variations thereof, along with the UL Service Mark (collectively, "UL Marks"). Dkt. 50-2, UL's Statement of Controverted Facts ("SUF") at no. 1. The Certification Mark appears as: ⓊⓁ. Dkt. 6, Declaration of Robert J. Pollock ("Pollock Decl."), Ex. B. The Service Mark appears as: UL. Id. Ex. C. UL has registered the Certification Mark (U.S. Reg. No. 782,589; U.S. Reg. No. 2,391,140) and the Service Mark (U.S. Reg. No. 4,201,014) with the U.S. Patent and Trademark Office. SUF at no. 3. UL's federal registrations for the Certification Mark have reached incontestable status pursuant to 15 U.S.C. § 1115(b). SUF at no. 4. UL has the exclusive right to use the UL marks and authorize customers to use the UL marks. SUF at no. 6; dkt. 6, Pollock Decl. Exs. A–C.

To obtain UL certification and listing in the UL certification directory, manufacturers submit representative product samples to UL for evaluation and testing. SUF at no. 7; Pollock Decl.¶ 19. If representative samples comply with the applicable safety, performance, or other standard, UL may authorize the manufacturer to affix the UL Certification Mark to that product. SUF at nos. 7–8; Pollock Decl. ¶ 20.

---

[1] The Court notes that in response to several of UL's statements of facts, defendants "dispute" UL's statements but offer no facts or evidence in rebuttal. For example, defendants assert: "Disputed. Defendants lack sufficient information to concede this statement as undisputed and UL has failed to produce sufficient evidence to prove this allegation." See Defendants' Statement of Genuine Issues of Material Fact ("Defs. SMF") at nos. 6, 7, 8, 9, 19, 20, 21, 22, 24, 37; cf. Defs. SMF at no. 31, 39 (substantially the same). Such assertions fail to satisfy defendants' burden to set out specific facts showing a genuine issue of material fact. See infra Section IV.A. The Court has already continued the hearing on UL's motion for partial summary judgment—pursuant to defendants' ex parte application under Federal Rule of Civil Procedure 56(d)—so that defendants could obtain additional evidence. See dkt. 56. Defendants have not made an additional Rule 56(d) motion. Accordingly the Court treats UL's statements of fact as undisputed where UL has met its burden and defendants offer no evidence showing there is a genuine issue for trial.

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
|----------|-------------------------|------|----------------|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

Space Chariot is a California corporation that sold hoverboards and was founded by Walker, who holds himself out as Space Chariot's president and chief executive officer. SUF at no. 11. The parties dispute whether Mortel was an officer of Space Chariot. See Defs. SMF at 12. Nevertheless, it *not* disputed that Mortel stated on her LinkedIn Account that she was a Vice President of Space Chariot. See dkt. 5, Ex. D (Mortel's LinkedIn profile); dkt. 65, Declaration of Donabelle Mortel ("Mortel Decl.") ¶ 3. Furthermore, both Walker and Mortel promoted Space Chariot hoverboards via their personal social media accounts. SUF at no. 15.

The parties dispute when defendants began advertising Space Chariot's hoverboards as UL certified. See Defs. SMF at nos. 16–17. Defendants contend they only advertised their hoverboards as UL certified when Deep Vapes received its UL 2722 certification in June 2016. Defs. SMF ¶ 16. However, defendants do not contest or challenge the authenticity of evidence demonstrating that Space Chariot's Facebook page advertised their hoverboards as "safety certified" along with images of the UL Certification Mark as early as December 2015. Dkt. 50-6, Ex. 17. In addition, on or about January 21, 2016, Kevin Olive—Investigation Manager for UL—visited the Space Chariot website, which included the statement "ALL Space Chariots are UL CE FCC RoHS Safety Certified," using what appears to be the UL Certification Mark. Dkt. 5, Declaration of Kevin Olive ("Olive Decl.) ¶ 8 & Ex. A. On January 27, 2016, in an email exchange between Olive and info@spacechariot.com, "Steven," a "Space Chariot Specialist" stated that "All our our products are safety certified (ROCH, UL, etc.)[.]" Olive Decl. Ex. E. On April 8, 2017, the Space Chariot website stated that "All Space Chariots are UL, CE, FCC and RoHS safety certified!" Olive Decl. ¶ 19 & Ex. F. Space Chariot continued to use on its website what appears to be the UL Certification Mark along with a statement that all of their products were UL certified on February 6, March 22, and April 19, 2016, and on October 9, 2017. SUF at no. 25; dkt. 50-6, Ex. 19.[2]

---

[2] Defendants object to the admission of images of the Space Chariot website obtained through the internet archive "Wayback Machine" in Exhibit 19 because the images are introduced through the declaration of Cameron M. Nelson, who purportedly lacks the requisite personal knowledge because neither Nelson nor his staff archived the images of Space Chariot's website from the Wayback Machine. Dkt. 68. However, "[c]ourts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[.]" Erickson v. Nebraska Mach. Co.,

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

UL first announced its safety standard for hoverboards, UL 2722, in February 2016 and did not certify any hoverboard product until May 2016. SUF at nos. 21, 22; dkt. 50-6, Ex. 18; Pollock Decl. ¶¶ 25. Walker has testified that he "did know about the certification when it was announced in February." See dkt. 50-6, Ex. 15 ("Walker Depo.") at 53:8–15.

On April 26, 2016, UL sent a cease and desist letter to info@spacechariot.com, stating that Space Chariot's use of the UL Marks was unauthorized and demanding that Space Chariot stop using any UL Marks. SUF at no. 26; Olive Decl. ¶ 21. On the same day, Walker asked Sally Beauty—a sales employee for Space Chariot's supplier, JOMO Technology Ltd. ("JOMO") and/or Deep Vapes—whether the supplier was UL certified.[3] SUF at no. 27; dkt. 50-7, Ex. 22. Beauty responded: "We are applying." SUF at no. 28; dkt. 50-7, Ex. 22.

---

No. 15-cv-01147-JD, 2015 WL 4089849, at *1 (N.D. Cal. July 6, 2015); see also Pond Guy, Inc. v. Aquascape Designs, Inc., No. 13-13229, 2014 WL 2863871, at *4 (E.D. Mich. June 24, 2014) ("As a resource the accuracy of which cannot reasonably be questioned, the Internet Archive has been found to be an acceptable source for the taking of judicial notice."); Martins v. 3PD, Inc., No. 11-cv-11313, 2013 WL 1320454, at *16 n.8 (D. Mass. Mar. 28, 2013) (taking judicial notice of "the various historical versions of a website available on the Internet Archive at Archive.org as facts readily determinable by resort to a source whose accuracy cannot reasonably be questioned"); Foreword Magazine, Inc. v. OverDrive, Inc., No. 1:10-cv-1144, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011) ("[T]he federal courts have recognized that Internet archive services, although representing a relatively new source of information, have sufficient indicia of reliability to support introduction of their contents into evidence, subject to challenge at trial for authenticity."). Accordingly, the Court takes judicial notice of the archived SpaceChariot.com webpages because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1).

[3] It appears that JOMO and Deep Vapes are affiliated or comprise the same entity. Walker refers to Sally Beauty as a Deep Vapes employee. See dkt. 64, Declaration of Kevin Walker ("Walker Decl.") ¶ 13. However emails from Sally Beauty to Walker come from the email address sales22@jomotech.com. See dkt. 50-7, Ex. 22.

**CIVIL MINUTES – GENERAL**　　　　　　　　'O'

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
|---|---|---|---|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

On May 17, 2016, the U.S. Consumer Protection Safety Commission ("CPSC") sent by email a letter informing defendants that CPSC staff was "evaluating whether the self-balancing scooters comply with currently applicable voluntary standards, including all referenced standards are requirements contained in UL 2272[.]" Dkt. 50-7, Ex. 23. On the same day, Walker asked Beauty whether JOMO's hoverboards had been tested and certified by UL yet; Beauty responded that they had been sent out for testing. SUF at 30; dkt. 50-7, Ex. 24.

On May 18, 2016, Olive called Space Chariot's customer service line and spoke with a Space Chariot employee named Ariel. Olive explained that Space Chariot is not a customer of UL, UL never conducted any tests on Space Chariot's hoverboards, and the hoverboards are therefore not "safety certified" by UL. Olive Decl. ¶ 21. Olive further explained that defendants were not authorized to use UL's Certification Mark or to suggest that Space Chariot hoverboards were certified by UL. Id. Ariel stated that she was taking notes and would speak to her manager regarding the phone call. Id.

On June 2, 2016, by text message to Walker, Beauty of JOMO/Deep Vapes stated: "Good news, we are almost to pass UL 2272." SUF at no 32; dkt. 50-7, Ex. 25.

On June 6, 2016, Space Chariot added a statement to the news section of its website asserting that its hoverboards were UL certified. SUF at no. 33; dkt. 50-7, Ex. 20.

On July 10, 2016, Beauty sent an email to Walker with proof of the UL 2272 certification. Walker Decl. ¶ 13 & Ex. 2. The certificate of compliance was issued on June 30, 2016. Walker Decl. Ex. 2

On August 4, 2015, a UL investigator working with Olive contacted Space Chariot to set up a time to purchase a hoverboard at Space Chariot's offices. SUF at no. 37; Olive Decl. ¶ 25. Upon retrieving and reviewing the hoverboard, it did not include any UL Marks, but it did include a sticker indicating that the board was made by "KooWheels," which is not a UL customer and is not authorized by UL to use any UL Marks. Olive Decl. ¶ 26 & Ex. K.

On August 25, 2016, Walker communicated by text message with Beauty. SUF at no. 38; dkt. 50-7, Ex. 28. Walker asked Beauty for the price of *non*-UL hoverboards and stated: "You can't keep charging me so much for non UL 2722. I've been paying you

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

$200 each for all as a friendly gesture even though it was $190[.] I need better than $190 for non UL 2722[.]" Dkt. 50-7, Ex. 28.

Defendants bought two non-UL certified hoverboards from JOMO/Deep Vapes on October 18, 2016. SUF at no. 40; dkt. 50-7, Ex. 29.

## III. LEAVE TO FILE THIRD-PARTY COMPLAINT

### A. Legal Standard

Federal Rule of Civil Procedure 14 provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. Proc. 14(a). If the defendant seeks to file a third-party complaint more than fourteen days after serving its original answer, it must file a motion and obtain leave of court before filing its third party complaint. Id. Here, because Space Chariot's original answer was filed on November 28, 2016, leave of the Court is required.

Rule 14(a)'s purpose is judicial economy. Zero Tolerance Entertainment, Inc. v. Ferguson, 254 F.R.D. 123, 126 (C.D. Cal. 2008). Thus, "a third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and is secondary or derivative thereto." Stewart v. Am. Int'l Oil & Gas Co., 845 F.2d 196, 200 (9th Cir. 1988); see also Irwin v. Mascott, 94 F. Supp. 2d 1052, 1056 (N.D. Cal. 2000) ("For impleader to be permitted under Rule 14, the third-party plaintiff's claim must be dependent upon the outcome of the main claim."). Thus, mere relation between the claims is insufficient; rather, a third-party claim "must be derivatively based on the original plaintiff's claim." "The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff." Stewart, 845 F.2d at 200 (citation omitted); Irwin, 94 F. Supp. 2d at 1056 (same).

"The decision whether to implead a third party defendant is within the sound discretion of the district court." Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 777 (9th Cir. 1986). "In deciding whether to permit [a] defendant to file a third party complaint, the court considers (1) prejudice to the original plaintiff; (2) complication of issues at trial; (3) the likelihood of trial delay; and (4) the timeliness of the motion." Irwin, 94 F .Supp. 2d at 1056 (citing Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 439 n.6 (3d Cir. 1971)); Green Valley Corp. v. Caldo

Oil Co., No. 09-cv-04028-LHK, 2011 WL 1465883, at *8 (N.D. Cal. Apr. 18, 2011) (same).

### B.    Discussion

Space Chariot contends that it entered into an agreement to purchase the hoverboards at issue in this action from Deep Vapes, which represented to Space Chariot that its hoverboards possessed valid UL certifications. MTPC at 3; dkt 49-1, Proposed Third-Party Complaint ("TPC") ¶ 11. Accordingly, Space Chariot seeks to assert one claim for equitable indemnity against Deep Vapes and Roes 1–10, inclusive. See MTPC at 3; TPC ¶¶ 16–19. Space Chariot argues that impleading Deep Vapes will increase judicial efficiency by avoiding a separate action by Space Chariot against Deep Vapes. MTPC at 4–5. In addition, Space Chariot contends that impleading Deep Vapes will enable Space Chariot to access discoverable information—namely whether the hoverboards purchased from Deep Vapes in fact had proper UL certifications. Id. at 5. Finally, Space Chariot argues that permitting it to implead Deep Vapes would not result in substantial delay or prejudice to UL. Id. at 6–7.

UL argues that the Court should deny Space Chariot's motion for three reasons: (1) impleading Deep Vapes would not increase judicial efficiency because Space Chariot's indemnity claim against Deep Vapes has no bearing on UL's claims against Space Chariot; (2) impleading Deep Vapes would cause undue delay; and (3) such delay would prejudice UL because defendants have already dispersed substantial assets during the pendency of this action and may continue to do so. Opp'n to MTPC at 3–4. UL also contests the justifications that Space Chariot offers for its need to implead Deep Vapes. First, record evidence demonstrates that Space Chariot sought to purchase *non*-UL certified hoverboards from Deep Vapes – thereby contradicting Space Chariot's assertion that Deep Vapes represented that all of its hoverboards possessed valid UL certifications. Opp'n to MTPC at 4. Second, even if such representations were made, defendants themselves should have evidence of those representations without impleading Deep Vapes for the purposes of discovery. Id. Third, Space Chariot may conduct third-party discovery with respect to Deep Vapes without impleading the company as a third-party defendant. Id. at 5.

The Court finds UL's arguments persuasive. Impleading Deep Vapes at this time would cause undue delay that would prejudice UL. Furthermore, as Space Chariot itself concedes, Space Chariot can seek indemnification by filing a separate complaint against

Deep Vapes.  MTPC at 5.  Accordingly, the Court **DENIES** Space Chariot's motion for leave to file a third-party complaint against Deep Vapes.

## IV.  SUMMARY JUDGMENT

### A.  Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out "specific facts showing a genuine issue for trial" in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

### B.     Liability for Trademark Infringement and Counterfeiting

To prevail on a claim for trademark infringement under the Lanham Act, a plaintiff must prove: (1) ownership of a valid trademark; (2) use of the mark without its consent; and (3) that such use is likely to cause confusion.  Credit One Corp. v. Credit One Financial, Inc., 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009); see also Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012) ("To prevail on its Lanham Act trademark claim, a plaintiff must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." (quotation marks omitted)); 15 U.S.C. § 1114(1). Counterfeiting is a more specialized case of trademark infringement because a counterfeit "is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127; see also 4 McCarthy on Trademarks and Unfair Competition § 25:10 (4th ed.) ("[C]ounterfeiting is 'hard core' or 'first degree' trademark infringement and is the most blatant and egregious form of 'passing off.'  As Judge Scheindlin put it, counterfeiting is an aggravated form of trademark infringement "that seeks to trick the consumer into believing he or she is getting the genuine article[.]").  In a case involving the willful use of a counterfeit mark, a plaintiff may elect statutory damages pursuant to 15 U.S.C. § 1117(c).

### 1.     Ownership

"Registration of a mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." Applied Info. Scis. Corp. v. eBAY, Inc., 511 F.3d 966, 970 (9th Cir. 2007) (quotation marks omitted).  UL has provided evidence of its trademark registrations and defendants do not contest UL's ownership of the UL Marks.  Accordingly, there is no dispute that UL owns the UL Marks, which are valid.

### 2.     Use of Identical UL Marks without Consent

UL has presented undisputed evidence of defendants using a mark that is "identical with, or substantially indistinguishable from" the UL Certification Mark "in connection with the sale, offering for sale, distribution, or advertising of goods or services."  15 U.S.C. §§ 1114(1), 1127.  For example, in January 2016—before UL had announced its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
| --- | --- | --- | --- |
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

safety standard for hoverboards in February 2016—defendants used a replica of the UL-in-a-circle Certification Mark on its website:



<u>See</u> Olive Decl. Ex. A.  In addition, on June 6, 2016—after Walker learned that JOMO/Deep Vapes was likely to receive UL certification, but *before* the certificate of compliance was actually issued on June 30, 2016—defendants used a replica of the UL-in-a-circle Certification Mark on its website and asserted that "SPACE CHARIOT, INC. HOVERBOARDS ARE UL 2722 CERTIFIED[.]"



Dkt. 50-7, Ex. 20.  UL has also presented evidence of defendants' use of the UL-in-a-circle Certification Mark on the Space Chariot website on February 6, March 22, April 29, and October 9, 2016, including, for example:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
|---|---|---|---|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

Dkt. 50-6, Ex. 19.

Having reviewed UL's Certification Mark and images from defendants' website, the Court finds that a rational trier of fact would not be able to find that defendants' use of the UL-in-a-circle symbol was not "identical with, or substantially indistinguishable from, a registered mark." See 15 U.S.C. § 1127.

Even if defendants purchased *only* UL-certified hoverboards from JOMO/Deep Vapes after JOMO/Deep Vapes received its June 30, 2016 certificate of compliance with UL 2722, defendants could not have had UL's consent when they used replicas of the Certification Mark *before* June 30, 2016. Furthermore, it is undisputed that even after JOMO/Deep Vapes obtained UL certification, Walker sought and Deep Chariots sold non-UL certified hoverboards while using a replica of the Certification Mark within the statement on its website that "*ALL* Space Chariots" were "safety certified!" Dkt. 50–6, Ex. 19 (emphasis added). Accordingly, the Court concludes that there is no dispute that defendants used replicas of the UL Marks without UL's consent.

### 3.    Likelihood of Confusion

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." Rearden, 683 F.3d at 1209.

The eight-factor Sleekcraft test is used in the Ninth Circuit to analyze the likelihood of confusion question in all trademark infringement cases, both competitive and non-competitive. The eight factors are as follows: (1) the strength of the mark; (2) the proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL              'O'

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
|----------|-------------------------|------|----------------|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

Dr. Seuss Enterprises v. Penguin Books USA, Inc., 109 F.3d 1394, 1404 (9th Cir. 1997), citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979). While the Sleekcraft factors are considered in reaching a decision on the issue of likelihood of confusion, "no mechanistic formula or list can set forth in advance the variety of elements that comprise the market context from which the likelihood of confusion must be determined." Dr. Seuss Enterprises, 109 F.3d at 1404. "The ultimate question of likelihood of confusion is predominantly factual in nature, as is each factor within the Sleekcraft likelihood of confusion test." Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1140 (9th Cir. 2002). "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1140 (9th Cir. 2002) (quotation marks omitted).

### Strength of the Mark

A mark's strength is based on its conceptual strength and strength in the marketplace. See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir. 2000). Conceptual strength, in turn, depends on the mark's characterization: the strongest marks are "arbitrary" and "suggestive" marks; the weakest are "descriptive" and "generic" marks. See Sleekcraft, 599 F.2d at 349. Weaker marks are afforded less protection than strong ones, with generic marks afforded no protection at all. See Matrix Motor Co. v. Toyota Jidosha, 290 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003). Here, the Court agrees with UL that their marks are conceptually strong because they are arbitrary, i.e., they "have no relevance to any feature or characteristic of a product." See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998). "Commercial strength is based on actual marketplace recognition." Network Automation, Inc. v. Advanced Systems Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011) (quotation marks omitted). UL's director of market surveillance has stated, and defendants fail to present any evidence disputing, that the UL Marks are renowned among the general public as symbols of UL's testing, inspection, and certification services. SUF at no. 2; Pollock Decl. ¶ 13. Accordingly, Court finds that a rational trier of fact would not be able to find that the UL Marks are weak. Furthermore, "in situations in which the appearance of the conflicting marks and the services provided are almost identical, the strength of the mark is of diminished importance in the likelihood of confusion analysis. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1208 (9th Cir. 2000) (citation and quotation marks omitted).

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
|---|---|---|---|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

Proximity of the Goods or Services

       The Court next considers the proximity or relatedness of the goods or services at issue.

> Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods.  [T]he danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists.  The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function.

Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1150 (9th Cir. 2011) (citations and quotation marks omitted).  With respect the relatedness of products and services offered, the Ninth Circuit has stated that, "[i]n light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."  Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1056 (9th Cir. 1999).  Because defendants have used identical replicas of the UL marks in connection with their sale of hoverboards—products that UL certifies—a rational trier of fact would find that the "consuming public is likely somehow to associate [Space Chariot's services] with [UL]."  See id. at 1056.

Similarity of the Marks

       The Court has already concluded that defendants have used a replica of the UL Certification mark that is "identical with, or substantially indistinguishable from, a registered mark."

Evidence of Confusion

       "[A]ctual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act.  Indeed, [p]roving actual confusion is difficult . . . and the courts have often discounted such evidence because it was unclear or insubstantial."  Network Automation, 638 F.3d at 1151 (citation and quotation marks omitted).  Accordingly, while UL presents no evidence of actual confusion, the factor is of little import to the Court's analysis regarding likelihood of confusion.

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
|---|---|---|---|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." Sleekcraft, 599 F.2d at 353. Contrary to defendants' assertion, it is irrelevant that UL itself does not itself sell hoverboards, because UL's customers use genuine UL marks to advertise hoverboards and other electrical products on the internet. See Opp'n to MSJ at 10. UL argues that defendants market their hoverboards in the same channels—the internet—to the same consumers that sellers of genuinely-certified hoverboards use. MSJ at 13; MSJ Reply at 12. However, "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." Network Automation, 638 F.3d at 1151. Accordingly, this factor weighs in favor of neither party.

Type of Goods and Degree of Purchaser Care

"Consumer care for inexpensive products is expected to be quite low. Low consumer care, in turn, increases the likelihood of confusion." Playboy Enterprises, Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020, 1028 (9th Cir. 2004) (citations omitted). UL argues that consumer care is low because the UL mark is so widespread that consumers are unlikely to inquire further when UL certifications is heavily advertised. MSJ at 13. Defendants contend that consumer care is high because hoverboards are regularly priced in the hundreds of dollars. Opp'n to MSJ at 10. The undisputed evidence demonstrates that even when Olive, a purported customer, exercised a high degree of care by asking whether Space Chariot's hoverboards were UL-certified, a Space Chariot employee responded—on January 27, 2016, before JOMO/Deep Vapes obtained UL certification—that "All [of their] products are safety certified (ROCH, UL, etc.)[.]" Olive Decl. Ex. E. Thus, a rational trier of fact could not find that even a consumer exercising a high degree of care would not be confused by defendants' unauthorized use of the UL marks.

Defendants' Intent in Selecting the Mark

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." Network Automation, 638 F.3d at 1153 (quoting Sleekcraft, 599 F.2d at 354). Because defendants knowingly used replicas of the UL Marks even

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
|----------|--------------------------|------|----------------|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

before UL certification for hoverboards existed, a rational trier of fact could only conclude that defendants' intended to use the counterfeit UL Marks to confuse customers.

Likelihood of expansion of the product lines

"Because [UL's services] and [defendants' hoverboards] are already related, as discussed within factor two, this factor is irrelevant." See Playboy Enterprises, 354 F.3d at 1029 (9th Cir. 2004).

Ultimately, the Sleekcraft factors "should not be rigidly weighed," Dreamwerks Prod. Grp., Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998), but are instead "intended to guide the court in assessing the basic question of likelihood of confusion," E. & J. Gallo Winery, 967 F.2d at 1290. "A determination may rest on only those factors that are most pertinent to the particular case before the court, and other variables besides the enumerated factors should also be taken into account based on the particular circumstances." Rearden, 683 F.3d at 1209. Five of the eight Sleekcraft factors—the strength of UL's mark, the relatedness of the goods, the similarity of the marks, the degree of purchaser care, and defendants' intent in selecting the mark—weigh in favor of UL. The other three factors weigh are neutral. Accordingly, the Court concludes that a rational trier of fact could only find that defendants' use of the counterfeit UL Marks was likely to cause confusion.

**4.    Nominative Fair Use**

In opposition to UL's motion for partial summary judgment, defendants for the first time invoke the affirmative defense of "nominative fair use" and argue that this doctrine makes the Sleekcraft factors irrelevant. Opp'n to MSJ at 11–12. "[N]ominative fair use is a defense to a trademark claim [that] protects a defendant where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." Adobe Sys. Inc. v. Christenson, 809 F.3d 1071, 1081 (9th Cir. 2015). In other words, "the Sleekcraft analysis doesn't apply where a defendant uses the mark to refer to the trademarked good itself." Toyota Motor Sales, U.S.A., Inc. v. Tabari, 610 F.3d 1171, 1175 (9th Cir. 2010). "This principle recognizes the proposition that [t]rademark law generally does not reach the sale of genuine goods bearing a *true mark* even though such sale is without the mark owner's consent." Adobe Sys., 809 F.3d at 1081 (emphasis added).

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

The Court first notes that an affirmative defense is "generally waived" where, as here, it was "not asserted in the answer to a complaint." In re Cellular 101, Inc., 539 F.3d 1150, 1155 (9th Cir. 2008). "[D]efendants may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff." Magana v. Com. of the N. Mariana Islands, 107 F.3d 1436, 1446 (9th Cir. 1997).

Second, the undisputed evidence demonstrates that defendants used the UL Marks to suggest that their hoverboards were "safety certified" by UL, before such UL certification became available and before defendants' supplier was UL certified. Accordingly, the replica UL Marks used *before* June 30, 2016 were not "true marks." See Adobe Sys., 809 F.3d at 1081. The Court therefore finds that defendants are not entitled to rely on the nominative fair use defense.

### 5.    Summary

In accordance with the foregoing, the Court finds that UL has presented undisputed evidence showing that defendants used a "spurious mark which is identical to or substantially indistinguishable from" the UL Marks "in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. §§ 1114; 1127. Accordingly, a rational trier of fact could not find for defendants on UL's claims for trademark infringement and counterfeiting of a registered mark. The Court therefore **GRANTS** UL's motion for partial summary judgment as against Space Chariot.

### C.    Statutory Damages

Title 15, Section 1117 allows a plaintiff to elect, at any time before final judgment is rendered, one of two alternative recovery options for the use of counterfeit marks: (1) the actual damages caused by the infringement, or (2) statutory damages. 15 U.S.C. § 1117(c). If a defendant's counterfeiting was not willful, a plaintiff may recover statutory damages in an amount "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed" under 15 U.S.C. § 1117(c)(1). By contrast, "if the court finds that the use of the counterfeit mark was willful," the plaintiff may recover statutory damages in an amount "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). "Willfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with an aura of indifference to plaintiff's rights-in other words, that the defendant willfully

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
|---|---|---|---|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it." <u>Philip Morris USA Inc. v. Liu</u>, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007).

UL argues that defendants' infringement and use of counterfeit UL marks was willful because UL never sought permission to use UL marks and because defendants were repeatedly put on notice that their hoverboards were not UL certified. MSJ at 15–17. Defendants argue that their conduct was not willful because (a) they never received Olive's cease and desist letters that were sent *by mail* to an incorrect address; (b) the CPSC letter did not result in a recall of Space Chariot hoverboards, suggesting that Space Chariot was complying with the relevant safety regulations; (c) defendants were entitled to use the UL mark beginning on July 10, 2016, when Walker was made aware that JOMO/Deep Vapes had obtained UL 2272 certification; (d) Walker's request for and his subsequent purchases of non-UL certified boards were the exception, not the rule; and (e) additional discoverable information in Deep Vapes' control will serve as evidence that defendants did not act willfully, but Deep Vapes has refused to comply with a subpoena. Opp'n to MSJ at 15–16.

Defendants' arguments are unavailing because the record evidence shows that defendants knowingly used replica UL Marks before a UL certification for hoverboards became available and before JOMO/Deep Vapes obtained the UL 2722 certification. For example, Walker concedes in his deposition that defendants were aware of UL's February 2016 announcement of its safety standard for hoverboards. <u>See</u> Walker Depo. at 53:8–15. Furthermore, even if defendants did not receive Olive's cease and desist letters *by mail*, Olive sent a cease and desist letter by email to info@spacechariot.com on April 26, 2016. Olive Decl. ¶ 21 & Ex. H. On that same day, Walker emailed Beauty of JOMO/Deep Vapes to ask whether its hoverboards were UL certified. Dkt. 50-7, Ex. 22. Beauty replied they were "applying." <u>Id.</u> Beauty later communicated by text message on June 2, 2016 that JOMO/Deep Vapes was "almost to pass the UL2722." Defs. SMF at 32; dkt. 50-7, Ex. 25. Walker did not receive confirmation from his supplier that the hoverboards he purchased were UL certified until July 10, 2016. Walker Decl. ¶ 16 & Ex. 2. That certification was issued on June 30, 2016. <u>See</u> Walker Decl. Ex. 2. At a minimum, defendants knew that the hoverboards obtained from JOMO/Deep Vapes between February and June 30, 2016 could not have been UL certified, but they advertised them as such. Furthermore, defendants used a replica of the UL Certification mark when they advertised that "*ALL* Space Chariots" were UL certified, dkt. 50-6, Ex. 19 (emphasis added), even though Walker requested non-UL certified hoverboards.

Walker asserts that such requests were "occasional" and made at the insistence of particular customers. Walker Decl. ¶¶ 17–18. However, Walker's messages with Beauty on August 25, 2016 belie this assertion. Walker asked for the price for non-UL certified hoverboards and stated "You can't *keep* charging me so much for non UL 2722. I've *been* paying you $200 each for *all* as a friendly gesture even though it was $190." Dkt. 50-7, Ex. 28 (emphasis added). These communications suggest that Space Chariot's purchase of non-UL certified hoverboards was common, not rare. Furthermore, in August 2016 defendants delivered a non-UL certified hoverboard to a UL investigator who did not request a non-certified board. SUF at no. 37; Olive Decl. ¶ 25. That Deep Vapes has failed to comply with a subpoena does not excuse defendants from their burden of producing evidence that creates a genuine dispute of material fact. Furthermore, all communications from JOMO/Deep Vapes establish that defendants knew that the hoverboards supplied by JOMO/Deep Vapes were not UL certified before June 30, 2016. Defendants present no basis for their belief that additional discoverable information from Deep Vapes would refute the record now before the Court.

The Court therefore concludes that there is no dispute of material fact regarding defendants' willful use of counterfeits of the UL marks. A rational trier of fact could not find that defendants' use of UL marks was not willful.

UL has elected to recover statutory damages instead of actual damages and seeks an award of $2,000,000 in statutory damages. MSJ at 18. Where "statutory damages are elected, [t]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990) (quotation marks omitted). When determining the appropriate amount of statutory damages to award under Section 1117(c), "some courts have considered the following factors that guide the award of statutory damages under an analogous provision of the Copyright Act:"

(1) the expenses saved and the profits reaped by the defendant; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Coach, Inc. v. Diva Shoes & Accessories, No. 10-cv-5151-SC, 2011 WL 1483436, at *6 (N.D. Cal. Apr. 19, 2011); cf. Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999) ("First, the relevant factors include whatever dollar figures are available, such as the expenses saved and the profits reaped by the infringers[,] . . . the revenues lost by the plaintiff, . . . [and] the value of the copyright." Second, "[s]ome factors do focus on an individual defendant's culpability, for instance, whether the defendant's conduct was innocent or willful, . . . or whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced. Third, the deterrent effect on others besides the defendant . . . [and] the potential for discouraging the defendant . . . factor[ ] into the determination of the award because [a]wards of statutory damages serve two purposes—compensatory and punitive." (citations and quotation marks omitted)).

Neither party presents complete records related to (1) the expenses saved and the profits reaped by defendants; (2) the revenues lost by UL; (3) or the value of the marks. However, defendants are incorrect that UL must prove lost revenue and defendants' gross sales. Opp'n to MSJ at 18–19 (citing cases involving actual damages awarded under 15 U.S.C. 1117(a), *not* statutory damages under 15 U.S.C. 11117(c)). "It is clear . . . that a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant." Peer Int'l, 909 F.2d at 1337 (quotation marks omitted). "Because a key purpose of § 1117(c) is to provide a monetary remedy in cases of amorphous damage, courts assessing statutory damages must exercise discretion in examining whatever facts and considerations are available in a setting of limited information." Sara Lee, 36 F. Supp. 2d at 166. Furthermore, "there is no necessary mathematical relationship between the size of [an award of statutory damages] and the extent or profitability of the defendant's wrongful activities." Coach, Inc. v. Diana Fashion, No. 11-cv-2315-SC, 2011 WL 6182332, at *4 (N.D. Cal. Dec. 13, 2011) (quoting Sara Lee, 36 F. Supp. 2d at 165)).

The Court has already concluded that defendants' infringing conduct was willful and that defendants have failed to cooperate in providing the relevant records. See dkt. 74 (concluding that defendants violated the Court's TRO and Preliminary Injunction by, inter alia, failing to provide a full accounting of assets, expenses, and bank records). In addition, the Court finds the need for deterrence in this action is particularly significant given that the improper use of UL marks—by defendants and other vendors—implicates consumers' perceptions about the safety of hoverboards and other electronic devices. However, the Court concludes that an award of $2,000,000 would be a windfall. See

Adobe Sys., Inc. v. Tilley, No. 09-cv-1085-PJH, 2010 WL 309249, at *6 (N.D. Cal. Jan. 19, 2010) (awarding statutory damages in an amount less than requested to avoid a "windfall"); Yelp Inc. v. Catron, 70 F. Supp. 3d 1082, 1102–03 (N.D. Cal. 2014) (same). Accordingly, the Court finds an award in the amount of $1,000,000 more reasonable.

UL also requests an award of attorneys' fees. MSJ at 25. Defendants are correct that "an election to receive statutory damages under § 1117(c) precludes an award of attorney's fees under § 1117(b)[.]" K & N Eng'g, Inc. v. Bulat, 510 F.3d 1079, 1083 (9th Cir. 2007). However, the Ninth Circuit was clear that this rule did not necessarily apply to the attorneys' fees provision under Section 1117(a). Id. at 1082 n.5 ("Because the fee award in this case was made pursuant to § 1117(b), we do not reach the issue whether an election to receive statutory damages under § 1117(c) precludes an award of attorney's fees for exceptional cases under the final sentence of § 1117(a)."). Section 1117(a) provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. 1117(a). The question of whether a plaintiff who elects statutory damages under Section 1117(c) can recover attorneys' fees under Section 1117(a) "remains an open one in this circuit[.]" SAS v. Sawabeh Info. Servs. Co., No. 11-cv-04147-MMM-MAN, 2015 WL 12763541, at *13 (C.D. Cal. June 22, 2015) (collecting cases). Considering the totality of the circumstances, the Court finds that this case is not "exceptional," and therefore concludes that UL would not be entitled to attorneys' fees, even if such an award were permissible. See Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014) ("[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."); Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 n.19 (1994) (in determining whether to award fees under a similar provision in the Copyright Act, district courts could consider a "nonexclusive" list of "factors," including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence").

## V.   CONCLUSION

In accordance with the foregoing, the Court **DENIES** Space Chariot's motion for leave to file a third-party complaint against Deep Vapes. The Court **GRANTS** UL's

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:16-cv-08172-CAS(AFMx) | Date | April 20, 2017 |
|----------|--------------------------|------|----------------|
| Title | UL LLC v. THE SPACE CHARIOT INC. ET AL. | | |

motion for partial summary judgment as against Space Chariot and **AWARDS** UL statutory damages in the amount of $1,000,000.  UL shall submit a judgment as to Space Chariot forthwith.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |